IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| BOBBY EZELL, | ) | |
| | ) | |
| Plaintiff, | ) | No. 09 C 6908 |
| v. | ) | |
| | ) | Judge Robert W. Gettleman |
| ILLINOIS DEPARTMENT OF | ) | |
| CORRECTIONS OFFICER SHAUN BASS; | ) | |
| ILLINOIS DEPARTMENT OF | ) | |
| CORRECTIONS OFFICER LANCE | ) | |
| FRANKLIN; ILLINOIS DEPARTMENT OF | ) | |
| CORRECTIONS OFFICER WILLIE | ) | |
| JOHNSON; and ILLINOIS DEPARTMENT | ) | |
| OF CORRECTIONS OFFICER TROY | ) | |
| MAYES, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Bobby Ezell, an inmate incarcerated at Menard Correctional Center, filed a two-count second amended complaint pursuant to 42 U.S.C. § 1983 against defendants Illinois Department of Corrections ("IDOC") officers Shaun Bass, Lance Franklin, Willie Johnson, and Troy Mayes, alleging an Eighth Amendment deliberate indifference claim and an Illinois state law claim for intention infliction of emotional distress. Plaintiff claims that, when he was incarcerated at Stateville Correctional Center in 2008, he shared a cell with Johnnie Henderson, whom plaintiff alleges was violent and mentally unstable and had threatened to attack him. After he had notified defendants of these concerns and unsuccessfully requested that either he or his cellmate be relocated, what plaintiff feared indeed came to pass. A month after the two became cellmates, Henderson attacked plaintiff with a knife. Plaintiff sustained serious injuries and lost two and a half pints of blood and at least one tooth; as a result, he remains unable to eat solid food.

Defendants have moved for summary judgment under Fed. R. Civ. P. 56, claiming that plaintiff failed to exhaust the Illinois Department of Corrections' administrative remedies, as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1197(e), and that no evidence supports his deliberate indifference claim against defendant Bass. Because there are disputed issues of material fact precluding summary judgment on both exhaustion and defendant Bass's liability, defendants' motion is denied. Defendants have also moved to strike two of plaintiff's exhibits offered in support of his statement of additional facts that require denial of summary judgment; for reasons discussed herein, that motion is also denied.

In evaluating a summary judgment motion, the court's role "is not to evaluate the weight of the evidence or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact." Doe v. R.R. Donnelley & Sons Co., 42 F.3d 439, 443 (7th Cir. 1994). A moving party must show that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The moving party must support that assertion with record citations. Fed. R. Civ. P. 56(c)(1)(A). Once the movant has met that initial burden, the nonmoving party can defeat summary judgment by "showing that the materials cited do not establish the absence . . . of a genuine dispute" or that the movant "cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact . . . , the court may . . . consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e)(2).

A party moving for summary judgment must also comply with Local Rule ("L.R.") 56.1. The court is "entitled to expect strict compliance" with this rule, Cichon v. Exelon Generation

Co., L.L.C., 401 F.3d 803, 809-10 (7th Cir. 2005) (quoting Ammons v. Aramark Unif. Servs., Inc., 368 F.3d 809, 817 (7th Cir. 2004)), and indeed this court's standing order on motion practice forewarns litigants that "L.R. 56.1 will be strictly enforced."  Revised Standing Order of Judge Gettleman Regarding Briefs, Motion Practice, Disclosures, and Protective Orders 2.I (revised Oct. 19, 2011), available at: http://www.ilnd.uscourts.gov/JUDGE/GETTLEMAN/motionpractice.pdf.  Under this rule, a movant must file a statement listing the material facts that it believes to be undisputed and which entitle it to judgment as a matter of law.  The rule specifies that this statement "shall consist of short numbered paragraphs, including within each paragraph specific references to the affidavits, parts of the record, and other supporting materials relied upon to support the facts set forth in that paragraph."  L.R. 56.1(a).  L.R. 56.1 makes clear that "[f]ailure to submit such a statement constitutes grounds for denial of the motion."  Id.

The nonmoving party must respond to this list of facts, and if it denies that a fact is undisputed, cite to the portion of the record that supports a contrary finding.  L.R. 56.1(b)(3)(B).  The nonmoving party must also submit a statement "of any additional facts that require the denial of summary judgment" along with record citations for those facts.  L.R. 56.1(b)(3)(C).  If the nonmoving party submits a statement pursuant to L.R. 56.1(b)(3)(C), the movant "may submit a concise reply in the form prescribed" under L.R. 56.1(b), and "[a]ll material facts set forth in the statement filed pursuant to section (b)(3)(C) will be deemed admitted unless controverted by the statement of the moving party."  L.R. 56.1(a).

Rather than follow these rules, which are not mere formalities but are designed to assist the court in determining whether genuine material factual disputes exist, defendants'

submissions are replete with inappropriate material: a legal conclusion,[1] propositions of law,[2] a quibble over an obvious typographical error,[3] responses that pile on additional information,[4] inconsistent denials,[5] equivocal responses that leave the court uncertain as to whether or not the

---

[1] Defendants' statement of facts ("SOF") ¶ 32 asserts that "Plaintiff did not exhaust his administrative remedies." This is far from a "fact"—it is the ultimate legal question presented by defendants' motion.

[2] Defendants' SOF ¶¶ 10–13 describe the Illinois Department of Corrections ("IDOC") grievance procedures in general terms, as set forth in the Illinois Administrative Code. They cite to two exhibits: the relevant portion of the Illinois Administrative Code and an affidavit of an IDOC official generally describing the IDOC grievance procedures.

[3] Plaintiff's L.R. 56.1(b)(3)(C) statement ¶ 1 ("On November 9, 2009, Plaintiff was housed in cell 108 in F-house.") incorrectly states the date in question as "November 9, 2009," but the statement is obviously intended to refer to November 9, 2008. There is no doubt that this is a mistake; the 2008 date is referred to repeatedly in plaintiff's amended complaint and the parties' briefing, and is not a matter of dispute. But rather than point out this inadvertent error and note that the statement is otherwise undisputed, defendants dispute the statement, which serves only to waste the court's, and the litigants', time.

[4] Defendants dispute plaintiff's L.R. 56.1(b)(3)(C) statement ¶ 36 ("Johnnie Henderson has a history of mental instability."). Their response continues with some additional argumentative commentary: "Further, Defendant Bass did not have information that informed him if an inmate is mentally ill, if they had a serious mental illness for which they're being medicated, and that is not taken into consideration in the placement decision." In addition to being ungrammatical, this statement is irrelevant to whether Henderson had a history of mental instability. Even if it were relevant, it is not proper to include additional matter in a response. See, e.g., Ciomber v. Coop. Plus, Inc., 527 F.3d 635, 643 (7th Cir. 2008).

[5] Defendants' response to plaintiff's L.R. 56.1(b)(3)(C) statement ¶ 1 (mentioned in footnote 3) claims that "[t]here is no citation to support that Plaintiff was housed in cell 108 in F-house 'on November 9, 2009.'" But defendants' response to the following statement ("Johnnie Henderson ('Henderson') was transferred into cell 108 with Plaintiff on November 9, 2009.") disputes only that "Henderson was transferred to cell 108," and does not dispute the remaining statements. The only "remaining statement," however, is that plaintiff was in cell 108 on November 9, 2009, which defendants dispute in their response to plaintiff's first additional statement. It is therefore a mystery whether defendants actually dispute this fact.

statements are truly disputed,[6] and statements and denials without record citations.[7] The court need not wade through all of this clutter, parsing and cross-referencing defendants' L.R. 56.1 submissions to determine which disputes are genuine and material. Ammons v. Aramark Uniform Serv., Inc., 368 F.3d 809, 818 (7th Cir. 2004) ("A court should not be expected to review a lengthy record for facts that a party could have easily identified with greater particularity.") (citing Waldridge v. Am. Hoechst Corp., 24 F.3d 918, 922 (7th Cir. 1994) ("[D]istrict courts are not obliged in our adversary system to scour the record looking for factual disputes and may adopt local rules reasonably designed to streamline the resolution of summary judgment motions.")). Nor must the court excuse the fact that defendants "push[] the limits of L.R. 56.1 with lengthy and compound factual statements," concluding with one string citation, which makes it difficult to ascertain which of the statements are in fact supported by the record. Degeer v. Gillis, 09 C 6947, 2012 WL 162186, at *2 n.1 (N.D. Ill. Jan. 19, 2012).[8]

---

[6] Defendants' response to plaintiff's L.R. 56.1(b)(3)(C) statement ¶ 4 asserts that "[d]efendants disputes [sic] that Plaintiff knew of Henderson when Henderson was transferred into Plaintiff's cell, due to his 'violent past' because the Plaintiff's citations do not support the contention." This appears to indicate that defendants agree that the record supports plaintiff's statement, but that plaintiff has not cited to the correct portion of the record. If defendants dispute that any support exists for it, there would be no reason to qualify the denial with the comment that "[p]laintiff's citations do not support the contention."

Defendants also frequently employ the familiar evasion tactic of responding that they "do not dispute that [certain] statements are consistent with the citations by Plaintiff," or that they "admit that the statements are consistent with the citations by Plaintiff," rather than using a simple "undisputed."

[7] Defendants' SOF ¶ 30 fails to include any citation. Most of defendants' denials of plaintiff's L.R. 56.1(b)(3)(C) statements take the following form: "Plaintiff's statement is disputed because Plaintiff's citations do not support the above contention. There is no citation to support that ___."

[8] For example, defendants' SOF ¶ 15 asserts that "[p]laintiff did not inform his counselor of" five different problems for which he claims to have filed grievances, then cites to six

The court notes that many of defendants' citations are inaccurate.[9] This casts substantial doubt upon the veracity of all of defendants' citations and statements. The court will not perform defendants' work by scouring the record to see if accurate citations might be found. Instead, the court strikes all of defendants' statements.

Similarly, defendants' attempts to dispute plaintiff's statement of additional facts are often, in the court's review, disingenuous.[10] The court therefore deems all of plaintiff's

---

different passages from a deposition. It is thus left to the court to determine which citation supports which of those five propositions—exactly the type of work that L.R. 56 is designed to avoid.

[9] Defendants' SOF ¶ 35 states that "Bass did not receive any correspondence dated December 1, 2008" from plaintiff. Defendants cite portions of Bass's deposition transcript that do not stand for this proposition. Instead, they indicate that because Bass "get[s] so many letters," he was unable to recall whether or not he received a written request from plaintiff.

Similarly, defendants' SOF ¶ 34 avers that "Bass did not receive or review any grievance Plaintiff may have filed concerning a threat to his safety." The cited portion of Bass's deposition transcript, however, indicates merely that Bass "can't say if anyone called [him]" about a grievance plaintiff claims he filed in December 2008. In addition, Bass's testimony refers only to one specific grievance; it does not make any broader point regarding whether he received or reviewed any of plaintiff's grievances.

Defendants' SOF ¶ 33 states: "No one ever spoke to Defendant Bass regarding Plaintiff's concerns about being attacked by his cellmate." For this proposition, defendants cite to three of their depositions—defendant Bass's, as well as those of defendants Mayes and Johnson. In the cited material, Bass's does support the proposition, and Johnson's is at least on point (providing evidence that <u>Johnson</u> did not talk to Bass about it, but not making any broader claims). The cited portion of Mayes's deposition, however, is completely irrelevant.

[10] Defendants claim to dispute plaintiff's L.R. 56.1(b)(3)(C) SOF ¶ 35, which states that Henderson, plaintiff's cellmate, "had a well documented history of violence within the IDOC," citing to Henderson's IDOC disciplinary card. Henderson's IDOC card lists the following offenses for which Henderson was found guilty and received disciplinary action: violent assault of an inmate (reduced to assault of an inmate) (March 2005); assault of an inmate (reduced to attempt) (June 2007); intimidation or threats (August 2007); dangerous contraband (metal) (September 2008); assault against inmate (December 2008); intimidation or threats (December 2008); dangerous contraband ("window handle sharpened") (March 2009); and intimidation or threats (July 2010). Defendants nonetheless claim that "[p]laintiff's citations do not support the

6

statements of additional facts admitted. See Ammons, 368 F.3d at 817 (holding that it is within district court's discretion to strike L.R. 56.1 submissions that fail to strictly comply with the rule).

Defendants' departures from the requirements of L.R. 56.1 are particularly surprising in light of their criticisms of plaintiff's failure to adhere to the rule. Defendants' reply brief asks the court to "deem the facts in paragraphs 15, 17 through 21, and 27 through 35 [of their L.R. 56.1(a) SOF] admitted" because "[p]laintiff provides argumentative responses to . . . paragraphs 15, 34, and 35, and . . . fails to make citations to the record that support Plaintiff's denials in paragraphs 17 through 21, and 27 through 35 in violation of Fed. R. Civ. P. 56(c)(1)." Although ¶¶ 15, 34, and 35 do include additional facts, these additional facts are at least pertinent to the

---

above contention." The court cannot comprehend how defendants could, in good faith, conclude that such a record does not substantiate a "history of violence within the IDOC."

Plaintiff's L.R. 56.1(b)(3)(C) SOF ¶ 36 states that Henderson "has a history of mental instability," citing Henderson's medical records. Defendants also dispute this statement because "[p]laintiff's citations do not support the above contention." Again, plaintiff's citations certainly do support his factual claim. For example, an October 3, 2008, mental health diagnostic and treatment note referring Henderson to a psychiatrist describes him as delusional and having auditory hallucinations.

For another example, plaintiff's L.R. 56.1(b)(3)(C) SOF ¶ 20 states: "On December 8, 2008, Plaintiff was sleeping when he was awakened by a blow to his head from having been stabbed in the face by Henderson." Defendants "dispute in part" this statement because "there are no citations supporting that 'having been stabbed in the face' by Henderson." This response is as ludicrous as it is ungrammatical. Defendants admit the following paragraph, ¶ 21, which states that "Plaintiff's injuries include . . . one (1) stab wound through his chin to his mouth which knocked out some bottom teeth from the root." Unless defendants are contesting Henderson's involvement, which seems unlikely given their admission that Henderson was plaintiff's cellmate on December 8, 2008, this attempt to dodge admitting ¶ 20 is preposterous. Defendants cannot possibly dispute that the chin and the mouth are part of the face, and nothing in defendants' SOF even hints that someone other than Henderson caused plaintiff's injuries. The identity of plaintiff's assailant is not a material issue for either of the arguments defendants have advanced in support of summary judgment.

7

issue raised in the original statement; that is more than can be said for many of defendants' responses. Compared to defendants' submissions, these paragraphs are far from argumentative. As for the responses defendants claim lack citations, defendants are incorrect. Some citations are simply to an exhibit without an internal citation thereto—but those exhibits are brief grievance forms that do not necessitate more precise citations. Nor would such citations be practical, because the grievance forms are handwritten documents that do not include line or paragraph numbering. The court therefore declines to deem these paragraphs as admitted.

Defendants also move to strike plaintiff's exhibits H (a purported affidavit of Henderson) and U (a grievance form) because they are not relevant to any issue raised in defendants' motion for summary judgment. Exhibit H, which plaintiff cites in support of his L.R. 56.1(b)(3)(C) statement ¶ 17 ("Johnson responded when Henderson attempted to commit suicide in cell 108.") is, however, relevant to the question of whether defendant Johnson was aware of Henderson's suicidal tendencies. Defendants appear not to disagree that this is a material issue, because they have not moved to strike the portion of plaintiff's deposition discussing this topic (which plaintiff also cites in support of his 56.1(b)(3)(C) statement ¶ 17). Defendants ostensibly oppose exhibit U because it is, in one place, dated December 7, 2010, but it is otherwise relevant (stating that an officer urged Henderson to "stab/kill your cellie")—and another part of the document is dated December 5, 2008, raising a factual question as to when the document was created. The court therefore denies defendants' motion to strike plaintiff's exhibits H and U.

Regardless, plaintiff has established that genuine disputes of material fact preclude summary judgment against him. Defendants argue that plaintiff failed to grieve the issues underlying the claims in the instant lawsuit, but plaintiff's deposition testimony and the

grievance forms attached to his L.R. 56.1 submissions tell a different story.  Specifically, defendants assert that plaintiff failed to notify his counselor of any issues relating to his claims, but plaintiff has testified to the contrary.  Defendants also argue that plaintiff failed to file any grievances addressing those claims, but their summary judgment motion and L.R. 56.1(a) statement do not attach copies of the eight grievances they agree plaintiff filed but claim are irrelevant—they offer such documentation only in response to plaintiff's statement of additional facts, thus depriving plaintiff of an opportunity to view these documents and respond to them.[11]  Nonetheless, plaintiff's response points to his deposition testimony and to a number of grievance forms evincing his efforts to comply with IDOC's grievance procedures.  Plaintiff further contends, again citing to his deposition, that he timely lodged other verbal complaints and written grievances, to which he received no response.

Finally, plaintiff points to evidence that defendants actively encouraged his noncompliance, rendering his administrative remedies effectively unavailable and thus excusing any failure to comply strictly with IDOC's administrative grievance procedures.  See Pavey v. Conley, 663 F.3d 899, 906 (7th Cir. 2011) (citations omitted) ("An administrative remedy is not 'available,' and therefore need not be exhausted, if prison officials erroneously inform an inmate that the remedy does not exist or inaccurately describe the steps he needs to take to pursue it."); Dole v. Chandler, 438 F.3d 804, 809 (7th Cir. 2006) (citations omitted) ("Prison officials may not take unfair advantage of the exhaustion requirement . . . and a remedy becomes 'unavailable'

---

[11] The court also notes that, in this submission, defendants failed to provide a list of exhibits and failed to tab the exhibits, in violation of L.R. 5.2(d), as well as this court's standing order.  The difficulty of sorting through these documents is compounded by defendants' failure to number the pages.

if prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting.").

Defendants additionally argue that defendant Bass had no notice that plaintiff was concerned about being attacked by his cellmate, thus warranting summary judgment in favor of at least that defendant. There is a contested issue of material fact, however, as to whether defendant Bass was aware of a risk that Henderson would attack plaintiff. Plaintiff points to his testimony that he sent Bass correspondence indicating that he "fear[ed] for [his] life being around" his cellmate. Defendants argue that "[p]laintiff provides no evidence that Bass received or reviewed any correspondence from Plaintiff," but in deciding a motion for summary judgment all reasonable inferences must be drawn in favor of the nonmoving party, and it is certainly reasonable to infer that internal jail correspondence reaches its intended recipient. Defendants' SOF ¶ 35 states that "Bass did not receive any correspondence" from plaintiff, but as discussed above these statements will be disregarded. The wisdom of doing so is further evidenced by examining the citations (from Bass's deposition) with which defendants attempt to support this statement. The cited portion of Bass's deposition states not that Bass did not receive correspondence; instead, Bass repeatedly testified that he "do[es] not recall getting such a letter." Thus, defendants have failed to establish that it is uncontested that defendant Bass was unaware of plaintiff's concerns.

Because summary judgment for defendants is not warranted, the question now is how to resolve the factual dispute regarding plaintiff's exhaustion of administrative remedies. The Seventh Circuit instructs that exhaustion should typically be decided before the merits, and that exhaustion is determined by the trial judge. Pavey v. Conley, 544 F.3d 739, 742 (7th Cir. 2008).

10

The sequence outlined in Pavey, however, assumes that everyone is aware at the outset that the defendant is raising failure to exhaust as an affirmative defense, so that judicial economy will be served by litigating exhaustion before the merits. Here, however, defendants did not list failure to exhaust as an affirmative defense in their answer, instead waiting until merits discovery had been completed before raising exhaustion—as well as a merits argument—in their summary judgment motion. Defendants have not argued that plaintiff was not prejudiced by defendants' failure to raise exhaustion in their answer, but neither has plaintiff claimed that he was prejudiced. So long as no prejudice results, the court need not find that defendants waived this affirmative defense. See Curtis v. Timberlake, 436 F.3d 709, 711 (7th Cir. 2005) (holding that "a delay in asserting an affirmative defense waives the defense only if the plaintiff was harmed as a result"). Absent any argument to the contrary, the court concludes that defendants have not waived this defense. The next step is an evidentiary hearing pursuant to Pavey.

Thus, for the foregoing reasons, defendants' motion for summary judgment is denied, as is their motion to strike plaintiff's exhibits H and U. The parties are directed to meet and confer

as to what steps are necessary to conduct an evidentiary hearing on exhaustion pursuant to Pavey.  This matter is set for a report on status February 16, 2012, at 9:30 a.m.


**ENTER:	February 1, 2012**

					_____
					**Robert W. Gettleman**
					**United States District Judge**